**No. 57663.**—Lustre Fibers, Inc. *v.* United States, protest 166480–K (Charleston).

FORD, Judge: The merchandise covered by this suit was classified by the collector of customs at Charleston, S. C., under the provisions of paragraph 1302

of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

Said paragraph 1302, as modified, so far as here pertinent, reads as follows:

Waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate, 5% ad val.

Filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste, whether known as cut fiber, staple fiber, or by any other name, 20% ad val.

The merchandise was entered at 5 percent ad valorem as rayon waste under paragraph 1302 of the Tariff Act of 1930 and T. D. 51802. In the following quotation from the so-called protest, it appears that the plaintiff intended to claim the merchandise dutiable as waste of rayon or other synthetic textile at 5 percent ad valorem:

On August 15, we received your notice No. 39922 stating that the merchandise had been found to be staple fibre and that the duty was therefore raised from the waste category subject to 5%, to the staple fibre category subject to 20% duty.

Since the collector appears to have understood the objection made by the plaintiff, and the Government has not moved to dismiss the protest on the ground that it is insufficient, we shall accept the same as being sufficient, basing this holding upon *Arthur* v. *Morgan*, 112 U. S. 495, wherein it was stated that:

* * * A protest is not required to be made with technical precision, but is sufficient if it shows fairly that the objection afterwards made at the trial was in the mind of the party and was brought to the knowledge of the collector, so as to secure to the government the practical advantage which the statute was designed to secure. *Converse* v. *Burgess*, 18 How., 413 [59 U. S., XV., 455]; *Swanston* v. *Morton*, 1 Curt. (C. C.), 294; *Kriesler* v. *Morton*, Id. 413; *Burgess* v. *Converse*, 2 Id. 216; *Steegman* v. *Maxwell*, 3 Blatchf., 365; *Frazee* v. *Moffitt*, 20 Id. 267. This protest apprised the collector that the carriage was claimed to be free, under section 2505, as a carriage actually used abroad over a year. The "household effects" clause was in the mind of the party and the collector could not fail to so understand. The protest was sufficient.

At the beginning of the trial of this case, counsel for the defendant made the following statement:

The papers also indicate clearly that the liquidation was on August 15, 1950, and the protest was received here at the Collector's office on October 16, 1950, 62 days after liquidation.

At the close of the trial, counsel for the defendant made the following motion:

At this time the Government respectfully moves to dismiss this protest on the grounds that the protest has been filed more than 60 days after liquidation, * * *.

It is an elementary rule of law that all motions in a case which challenge the jurisdiction of the court must be disposed of prior to considering the case on its merits. The motion in this case was to dismiss the protest on the ground that it was not filed within the time specified in section 514 of the Tariff Act of 1930. If the protest was not filed within the specified time after liquidation, it would appear that the same was untimely, and that this court, therefore, has no jurisdiction to consider this case on its merits.

The record establishes that the entry here involved was liquidated on August 15, 1950, and that the protest was not filed until October 16, 1950. It also appears that the 60th and 61st days after liquidation fell on Saturday and Sunday, days when the collector's office was legally closed for the transaction of customs business.

In *Railway Express Agency, Inc.* v. *United States*, 30 Cust. Ct. 424, Abstract 57260, this court, in dealing with a similar question, said:

The latest expression of this court on the question of periods of limitation under the tariff act may be found in the cases of *Thalson Co.* v. *United States*, 28 Cust.

Ct. 536, Reap. Dec. 8080, and *Hawaiian Oke & Liquors, Ltd.* v. *United States*, 28 Cust. Ct. 58, C. D. 1388. In the *Thalson* case, *supra*, the 30th day within which the plaintiff could have filed its appeal for reappraisement, pursuant to the provisions of section 501 of the Tariff Act of 1930, as amended, fell on a Saturday, a day upon which the collector's office was closed in accordance with departmental regulations. In holding that the filing of an appeal on the Monday following was timely, the court stated:

> It is manifest that the plaintiff herein could not have filed the appeal for reappraisement on Saturday, August 23, 1947, the 30th day after the date of mailing of written notice of appraisement, for the reason that the collector's office, the place where such filing is required to be done, was closed on that day pursuant to departmental regulations, nor could such filing have been done on the following day, Sunday, August 24, 1947, for the same reason.

> The writer is of the opinion that the 30-day statute of limitations contained in section 501, *supra*, must be construed in the light of the liberal and lenient congressional policy which has been manifested in its concurrence in rule 6 (a), *supra*, and carried into effect by the decisions of the Supreme Court of the United States and other courts of the United States, as hereinbefore noted, and that so construed, the appeal for reappraisement herein was timely.

Rule 6 (a) of the Federal Rules of Civil Procedure, prescribed by the Supreme Court of the United States under § 2072 of the Judiciary and Judicial Procedure Act (title 28 U. S. C.) to govern the procedure in United States district courts, to which rule the court in the *Thalson Co.* case, *supra*, adverted, reads as follows:

### Rule 6. Time.

> **(a) Computation.** In computing any period of time, prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Sunday nor a holiday. When the period of time prescribed or allowed is less than 7 days, intermediate Sundays and holidays shall be excluded in the computation. A half holiday shall be considered as other days and not as a holiday.

The *Hawaiian Oke & Liquors, Ltd.* case, *supra*, involved a situation where the 60-day period for the filing of a protest fell on a Saturday. The court therein held that the filing of a protest on Monday, the next business day after the Saturday closing of the customhouse, constituted a legal filing.

We are not unmindful of the holding of the Court of Customs Appeals in *Psaki Bros.* v. *United States*, 3 Ct. Cust. Appls. 479, T. D. 33122, to which the Government in its brief herein directs our attention. That case arose under the Tariff Act of 1890. Our appellate court held that when the 10-day limit for filing a protest expired on a Sunday, it was not a seasonable compliance when the protest was filed on the Monday morning ensuing. We are of opinion, however, that the 60-day statute of limitations contained in section 514 of the Tariff Act of 1930 here in question is subject to the more liberal interpretation indicated by this court in the *Thalson Co.* and the *Hawaiian Oke & Liquors, Ltd.*, cases, *supra*. Accordingly, under the authority of the above decisions, we hold that the 60-day period for the filing of the instant protest was extended until the next business day, at which time it appears this protest was filed. The protest was, therefore, timely. The motion to dismiss the protest as untimely is accordingly denied.

In view of the similarity of the factual situation existing in the instant case to that in the cases cited, *supra*, and since no appeal was taken in the *Railway Express Agency* case, *supra*, although the time therefor has long since expired, we accept those decisions as requiring a holding that the instant protest was filed within the time prescribed by the statute. The motion of the defendant to dismiss is, therefore, denied.

At the trial of this case, counsel for the plaintiff attempted, through the testimony of witnesses, to trace the involved merchandise from the ship upon which it was brought to the shores of this country to the ultimate user or consumer of the merchandise. The following testimony shows that counsel for the plaintiff was

not successful in his effort to trace this merchandise from the point of landing to the ultimate consumer:

X Q. You don't know of your own knowledge whether the merchandise that you ordered the terminal to ship to the West Point Utilization Company was in fact shipped, do you?—A. I have evidence the railroad signed the bill of lading for it.

X Q. You have evidence that the railroad sent something to the West Point Utilization Company?—A. Right.

X Q. Exactly what they sent you don't know, isn't that so? I am talking of your own knowledge.—A. I didn't see it.

X Q. You don't know?—A. No, sir.

Had counsel for the plaintiff been successful in his efforts to trace this merchandise from the point of landing to the ultimate consumer, we are not able to see how this would tend to establish that the involved merchandise was, in fact, waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate, as claimed by the plaintiff, rather than filaments of rayon or other synthetic textile, not exceeding 30 inches in length, other than waste, whether known as cut fiber, staple fiber, or by any other name, as classified by the collector.

Counsel for the plaintiff offered the testimony of the sales manager of the West Point Utilization Co. for the purpose of showing that the involved merchandise, represented by plaintiff's exhibit 7, was waste of rayon or other synthetic textile, rather than filaments of rayon or other synthetic textile, as classified by the collector. Any weight which might have been given to the testimony of this witness is destroyed by the following questions and answers under cross-examination with reference to said exhibit 7:

X Q. Why isn't that staple?—A. It could be staple. I am saying in my opinion it is open waste.

X Q. Why do you say it could be staple?—A. Because it could. There are indications of waste in it. I see an occasional thread which would indicate that it could be waste. Let me say this: There would be no way to identify, or for me to determine the difference between staple fibre and staple waste. I could not. It is absolutely the same process, but the manufacturer somewhere has determined that the staple is inferior. Therefore it becomes a waste item.

X Q. Is that true with respect to Plaintiff's Exhibit 7, which you described as open waste or staple waste?—A. That is right.

X Q. You can't tell whether this is staple fibre?—A. I think possibly in some of these instances it would take a chemical analysis.

X Q. Would it be true with respect to Plaintiff's Exhibit 7?—A. Yes.

X Q. So when you stated on direct examination that Plaintiff's Exhibit 7 was in your opinion open waste, or staple waste, you weren't exactly sure about that?—A. That is the reason I qualified it, in my opinion.

X Q. It could be staple?—A. Yes.

In all classification cases, the plaintiff assumes a twofold burden of showing (1) that the classification of the collector is wrong and (2) that one of the claims made by it is correct. The provision of paragraph 1302, *supra*, under which plaintiff claims the instant merchandise to be dutiable, provides for "Waste of rayon or other synthetic textile," but excludes from that provision "waste wholly or in chief value of cellulose acetate." So, if upon this record, it should be held that the involved merchandise is a waste of rayon or other synthetic textile, the record fails completely to establish that the merchandise is not a waste wholly or in chief value of cellulose acetate. If the involved merchandise is a waste wholly or in chief value of cellulose acetate, it cannot find classification under that part of paragraph 1302 under which the plaintiff makes claim in this protest.

For the reasons stated, all claims of the plaintiff must be, and the same are hereby, overruled. Judgment will be rendered accordingly.