(C. D. 1718)

F. W. MYERS & Co., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 14, 1955)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: This protest is directed against the action of the collector of customs at the port of Ogdensburg, N. Y., in refusing to allow drawback under the provisions of section 313 (c) of the Tariff Act of 1930 upon the exportation of merchandise not conforming to sample or specifications. Section 313 (c), *supra*, as in effect at the times here pertinent, reads as follows:

SEC. 313. DRAWBACK AND REFUNDS.

*       *       *       *       *       *       *

(c) MERCHANDISE NOT CONFORMING TO SAMPLE OR SPECIFICATIONS.—Upon the exportation of merchandise not conforming to sample or specifications upon which the duties have been paid and which have been entered or withdrawn for consumption and, within thirty days after release from customs custody, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

The facts of importation, failure to conform to sample or specifications, and exportation are not in dispute and are established by the record. Drawback was disallowed by the collector for the reason that more than 30 days elapsed from the time of release of the merchandise from customs custody and its return thereto for the purpose of exportation.

The imported merchandise, consisting of aluminum doors, was imported into the United States through the subport of Rouses Point, N. Y., and it is undisputed that it was released from customs custody

on May 1, 1952. The importer of record, and plaintiff herein, was a customs broker who secured the release upon an immediate release bond and forwarded the merchandise to the ultimate consignee, a New York City firm. It appears that, during the latter part of May 1952, the ultimate consignee telephoned the plaintiff stating that the merchandise did not conform to specifications and inquiring as to the requirements for exportation with benefit of drawback.

The doors were returned to Rouses Point and arrived there on Friday, May 30, 1952, which was Memorial Day, a national holiday and one on which the office of the collector of customs was scheduled to be closed (sec. 1.8, Customs Regulations of 1943).

On the preceding day, May 29, an employee of the plaintiff, who had the matter in charge, called the deputy collector of customs in charge at Rouses Point and asked if the latter would accept the drawback entry of the following day, May 30, and was told that he would not accept the entry on that day, nor the following day, May 31, which was a Saturday and a day on which the collector's office was scheduled to be closed (sec. 1.8, *supra*), nor the following day, Sunday, June 1, for the same reason.

The merchandise was returned to customs custody on Monday, June 2, 1952, under drawback entry, dated and filed as of that day, and was subsequently exported.

The plaintiff herein cites and relies upon the decisions of this court in *Hawaiian Oke & Liquors, Ltd.* v. *United States,* 28 Cust. Ct. 58, C. D. 1388, and *Thalson Co.* v. *United States,* 28 Cust. Ct. 536, Reap. Dec. 8080, affirmed in *United States* v. *Thalson Co.,* 32 Cust. Ct. 663, A. R. D. 40, and of the district court, Northern District of Georgia, in the case of *Jacobs Pharmacy Co., Inc.* v. *United States,* 71 Fed. Supp. 584. To these may be added *Railway Express Agency, Inc.* v. *United States,* 30 Cust. Ct. 424, Abstract 57260, and *Lustre Fibers, Inc.* v. *United States,* 31 Cust. Ct. 318, Abstract 57663.

The foregoing decisions relate to the matter of the computation of time when the last day for the performance of an act under a statute falls on a Saturday, Sunday, or a holiday. The *Hawaiian Oke & Liquors, Ltd.,* case involved the statutory 60-day period provided in section 514 of the Tariff Act of 1930, within which protests against the decisions of collectors of customs must be filed. The 60th day, in that case, was Saturday, December 4, 1948, when, in accordance with departmental regulations (sec. 1.8, Customs Regulations of 1943, *supra*), the customhouse at San Francisco was not open for the transaction of general customs business. The protest there in question was deposited with the marine officer on special duty at the customhouse for the clearance of vessels, who was not authorized to handle matters such as the receipt of protests. It was turned over to the collector's

office on the next business day, Monday, December 6, 1948, which was the 62d day after liquidation.

In denying the Government's motion to dismiss the protest as untimely, the third division of this court held (1) that the deposit of the protest with the marine officer was not a proper filing thereon, but that (2) its receipt by the collector on December 6 constituted a timely filing under section 514, *supra*. In so holding, the division cited the *Jacobs* case, among others, and held that the effect of comparatively recent statutory and judicial pronouncements on the subject of the computation of time, when the last day for the doing of an act falls on a Saturday, Sunday, or holiday, was to extend the period until the next business day.

To the same effect are the *Thalson Co.* case, dealing with section 501 of the Tariff Act of 1930, as amended, providing a 30-day period within which appeals for reappraisement must be filed, and the *Jacobs Pharmacy Co., Inc.*, case, dealing with the 3-month period within which claims for drawback of internal revenue distilled spirits tax paid on nonbeverage products must be filed under the provisions of section 3250 (*l*) (5) (C) of the Internal Revenue Code, as amended.

In the brief filed in its behalf, counsel for the Government seeks to limit the application of the doctrine of the cited cases to adjective or procedural time limitations in courts, in connection with the filing or prosecution of actions, and to bar its application to substantive or administrative time limitations. Counsel has cited several cases, including *Wilkes* v. *United States*, 192 F. (2d) 128, and *Rutledge* v. *Sinclair Refining Co.*, 13 F. R. D. 477, as instances where the doctrine has been applied with reference to the filing of actions.

Rule 6 (a) of the Federal Rules of Civil Procedure and the decision of the Supreme Court of the United States in *Union National Bank* v. *Lamb*, 337 U. S. 38, represent the more modern and liberal approach to the question of time computation. Counsel for the defendant has not cited any case decided since that time wherein the modern and liberal approach was held inapplicable to substantive or administrative time limitations.

It seems clear that, in its consideration of the matter in the *Union National Bank* case, the Supreme Court made no distinction between adjective and substantive statutory time limitations, for, in discussing the issue, the majority [1] pointed out that—

\* \* \* There is a contrariety of views whether an act which by statute is required to be done within a stated period may be done a day later when the last day of the period falls on Sunday. \* \* \*

and, as an example of such contrariety, cited *Street* v. *United States*, 133 U. S. 299. That case involved a statutory time limitation with

---

[1] The only written dissent filed was based upon grounds other than the computation of time.

respect to the exercise of Executive power affecting substantive rights and had no reference to the filing or prosecution of actions in courts. Certainly, no objective reason exists for a distinction between adjective and substantive statutory time limitations, and we see no reason why different rules of computation should be applied to such situations.

Moreover, there are cogent reasons why the reasonable and fair interpretation represented by the decision in the *Union National Bank* case should be applied to situations such as that at bar. One of such reasons was expressed by the court in the *Rutledge* v. *Sinclair Refining Co.* case, *supra*, as follows:

* * * The practical effect of upholding the defendant's position would further limit the statutory period by one day where the last day falls on a Sunday. The counter argument that "district courts shall be deemed always open for the purpose of filing any pleading" overlooks the hard fact that the Clerk's Office in this district is not open for the filing of papers on Sundays or holidays, or for that matter, after noon time on Saturdays. Theoretically, the putative litigant might hunt up a Judge of this Court or the Clerk at his residence or elsewhere and file with one of them. But I think it unfair that substantial rights should depend upon the doubtful contingencies which may arise in the attempt to do so. The vindication of the rights of a litigant should not turn either upon this circumstance or upon a narrow construction of the rules.

So, in the case at bar, to hold in accordance with the Government's theory would be to limit the period within which a drawback claimant might return the goods to customs custody to 29 days, rather than the 30 days the statute expressly permits. Moreover, it clearly appears from the record that in no case would the customs officers at Rouses Point receive either the drawback entry or the return of the goods on May 30, 31, or June 1, 1952, so that tender of either or both the entry or the goods on any of those days would have been futile acts.

Counsel for the Government has sought to distinguish the case of *Jacobs' Pharmacy Co., Inc.* v. *United States, supra,* from the present case. In our opinion, the situation in that case is virtually on all fours with the situation in this case. There, it was sought to complete a claim for drawback of internal revenue taxes on the last day of the statutory 3-month period, while, here, it was sought to complete a claim for drawback of customs duties on the last day of the statutory 30-day period.

As in this case, the office of the collector was closed on that day, in accordance with departmental instructions with respect to holidays, and the claim was actually filed on the next succeeding business day.

Similarly, in that case, the administrative officers denied drawback on the ground that the drawback claim was untimely filed, whereupon the claimant brought suit in the district court for recovery of the taxes. In opposition to a motion to dismiss, made on behalf of the Government on the ground that the plaintiff had not complied with the statute to entitle it to recover, plaintiff made two contentions: First, the day

on which the office was closed was not a legal holiday; that the closing of the office denied it full opportunity to file its claim; and that it had proceeded in the only way it could; and, second, that, under both common law and the Federal Rules of Civil Procedure, the time for filing the claim was extended to the first work day thereafter, which was the day on which the claim actually was received by the collector.

The district court held that on both theories the motion to dismiss was not good. Counsel for the Government herein contends that the denial of the motion on the first ground stated was sound and that the court's reference to the second ground was mere *dicta*. In the light of the *Union National Bank* case, however, and what has been said heretofore, we are of the opinion that the decision in the case rests as soundly upon the second theory as it does upon the first.

Counsel for the Government makes some further point of the fact that, although the plaintiff was in possession of the merchandise and the data upon which the drawback entry was to be prepared, no effort was made to prepare or file it until the next succeeding business day, June 2, 1952. As we have said, a tender of an entry or of the merchandise during the time the collector's office was closed for the transaction of general customs business, pursuant to departmental instructions, on May 30, 31, and June 1, 1952, would have been a useless act, as no one would receive the tender. Under such circumstances, it would be a slavish adherence to form and a neglect of substance to require one to go through the motions of tender which he knew, and in this case had been informed in advance, would not be received. Tender on the next succeeding business day was, therefore, sufficient to perfect the rights involved.

On the record presented, we are satisfied that the plaintiff herein complied with all the statutory and administrative requirements to entitle it to recover the drawback claimed, and judgment will issue accordingly.